UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80545-CIV-MIDDLEBROOKS

SREAM, INC., a California Corporation, and
ROOR INTERNATIONAL BV, a Foreign
Corporation,

        Plaintiffs,

v.

THE SMOKERS EDGE, LLC, d/b/a
THE SMOKERS EDGE, a Florida Corporation,
RAYMOND POTEET, and JULIA POTEET,

        Defendants.

_____/

## ORDER AWARDING ATTORNEY'S FEES

THIS CAUSE comes before the Court upon a Motion for Attorney's Fees filed by Defendant the Smokers Edge, LLC ("Defendant") on March 21, 2019. (DE 70). Plaintiffs Sream, Inc. and RooR International Bv ("Plaintiffs") responded on April 4, 2020. (DE 71). Defendant replied on April 11, 2019. (DE 73).[1] For the following reasons, Defendant's Motion is granted.

**I.    BACKGROUND**

This is a trademark case about a water pipe sold by Defendant, a store which sells smoker's products. (DE 59 ¶ 3). Defendant is owned by Raymond and Julia Poteet.[2] In December of 2015, Ms. Poteet purchased a single water pipe from a distributer and sold it for $15.90 in her store. (DE 59 ¶¶ 6,7). This water pipe bore the mark "RooR," which, unbeknownst to her,[3] was a counterfeit

---

[1] Plaintiffs moved to file a Sur-Reply. (DE 74). However, I find that given the thoroughness of the briefing, there is no need for a sur-reply.

[2] Raymond and Julia Poteet were originally named as Defendants, but were dismissed before trial. (DE 49).

[3] I found that "Julia Poteet's testimony was credible in that the Poteets were unaware of the

mark. (DE 59 ¶¶ 6,8). Authentic RooR pipes are of a much higher quality than the pipe sold by Defendant; for example, authentic RooR pipes never use rubber grommets. (DE 59 ¶ 11).

Based on the sale of this counterfeit pipe, Plaintiffs initiated a trademark action against Defendant on April 26, 2018. (DE 1). On August 15, 2018, Defendant offered to settle this matter for $2,500, but Plaintiffs rejected this offer. Defendant renewed this offer (with a one-dollar increase) on September 5, 2018, but Plaintiffs again rejected this offer. Therefore, this case proceeded to a bench trial on February 4, 2019. (DE 52).

At trial, I considered whether Defendant's allegedly infringing acts violated the Lanham Act by considering whether Defendant (1) "had prior rights to the mark at issue and (2) whether "defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1289 (S.D. Fla. 2016) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)). In determining whether Defendant's use of the mark would create consumer confusion, I considered the seven factors set forth by the Eleventh Circuit: (1) type of mark; (2) similarity of mark; (3) similarity of the products the mark represents; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335-41 (11th Cir. 1999), *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).

I found that Plaintiffs had failed to satisfy the final five factors. Significantly, I found that "the quality of the counterfeit pipe Defendant sold was so poor, and the price at which it was offered was so far below market value, that there would be almost no likelihood that any person

counterfeit nature of one or more pipes in their shop." (DE 59 at 7).

would be deceived, aside from the most naïve consumer." (DE 53 at 7). Accordingly, I entered judgment in favor of Defendant.

## II. THE AVAILABILITY OF ATTORNEY'S FEES

### A. Legal Standard

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "Under this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). "Congress, however, has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes." *Id.* The Lanham Act is one such statute. *See* 15 U.S.C. § 1117.

Under the Lanham Act, a court may award a prevailing party reasonable attorney fees "in exceptional cases." 15 U.S.C. § 1117(a). The Supreme Court defines an "exceptional case" as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[4] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In making this determination, courts may consider "the frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in

---

[4] While the *Octane Fitness* case explicitly dealt with the Patent Act, the relevant provisions of the Lanham Act and the Patent Act contain the same language regarding "exceptional cases." Courts in other jurisdictions have determined that Octane Fitness also controls their interpretation of § 35(a) of the Lanham Act. *See, e.g., Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014); *Georgia-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 720 (4th Cir. 2015), as amended (Apr. 15, 2015); *Baker v. DeShong*, 821 F.3d 620, 623 (5th Cir. 2016); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016).

3

particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756, n. 6. The Supreme Court went on to add that "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* To establish entitlement to attorney's fees, the moving party must make this showing by a preponderance of the evidence. *Id.* at 557.

### B. Discussion

Defendant is indisputably the prevailing party in this litigation. However, success on the merits is only a threshold inquiry; Defendants must also establish that this case is "exceptional" under the meaning of *Octane Fitness*. Defendant attempts to make this showing on several grounds, which I will address in turn.

#### *1. Proceeding Despite Unsuccessful Discovery*

Defendant asserts that this case was exceptional as Plaintiffs proceeded to trial with no evidence of consumer confusion. Plaintiffs concede that they had no such evidence. However, Plaintiffs argue, correctly, that evidence of consumer confusion is not mandatory, so long as there is evidence of a *likelihood* of confusion. *See Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999).

I do not find that Plaintiffs' lack of evidence of consumer confusion makes this case *per se* frivolous or unreasonable. However, taking the facts as a whole, the lack of such evidence points to the considerable weakness of Plaintiffs' litigating position. As I discussed in my Order following the bench trial in this case, "the quality of the counterfeit pipe Defendant sold was so poor, and the price at which it was offered was so far below market value, that there would be almost no likelihood that any person would be deceived, aside from the most naïve consumer." (DE 53 at 7). Therefore, the inference of consumer confusion was extremely weak. This is something that

Plaintiffs should have considered at the outset of this case. Of course, had Plaintiffs uncovered evidence during discovery that consumer confusion had occurred, Plaintiffs would no longer need to rely on that inference. Once it became clear that there was no such evidence, the substantially wiser course would have been to accept Defendant's settlement offer, rather than proceeding to trial.

### 2. *Failing to Investigate the Distributor*

Defendants also argue that "[i]n early discovery, Plaintiffs were apprised of the distributor who sold the counterfeit water pipe to the Defendant. Yet Plaintiffs never investigated the distributor nor did they seek to add them as a party." (DE 73 at 4). I find that this further supports the unreasonableness of Plaintiffs' position. Plaintiffs conceded at trial that no evidence exists that The Smokers Edge sold counterfeit products bearing RooR marks after the water pipe that prompted this litigation was sold. (DE 59 ¶ 8). Therefore, this was not a significant or ongoing act of infringement by Defendants. The distributor, presumably, was engaging in much more large-scale infringement, which would cause far greater harm to Plaintiffs. Plaintiffs' failure to go after the distributor in a timely manner suggests an understanding that this infringement was not actually causing Plaintiffs the harm that they claimed.

### 3. *Latches*

As further discussed in my Order following the bench trial, Plaintiff was entitled to the equitable defense of latches. A defense of laches under the Lanham Act is demonstrated by showing: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. *Star-Brite Distrib., Inc. v. Gold Eagle Co.*, 2016 WL 4470093, at * 1 (S.D. Fla. Jan. 25, 2016) (citing *Kason Indus. Component Hardware Group*, 120 F.3d 1 199, 1203 (11th Cir. 1997). I stated that "I do not find

5

Plaintiffs' delay here to have been excusable or reasonable." (DE 59 at 8).

In combination, I find that these three deficiencies in Plaintiffs' case support a finding that Plaintiff acted unreasonably and that its case was frivolous. Accordingly, an award of attorney's fees for Defendants is appropriate as this case is "exceptional."[5]

### III. THE AMOUNT OF ATTORNEY'S FEES

#### A. Legal Standard

A reasonable attorney's fee award "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The fee applicant bears the burden of documenting "the appropriate hours and hourly rates." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). The product of these two figures is the lodestar and there is a "strong presumption" that the lodestar is the reasonable sum the attorney deserves. *See Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565-66 (1986). After calculating the lodestar, the court determines whether any portion of this fee should be adjusted upwards or downwards for results obtained. *Norman*, 836 F.2d at 1302.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Id.* at 1299 (citing *Blum*, 465 U.S. at 895-96 n.11). In determining what constitutes a reasonable hourly rate, the court may consider the twelve factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[6] The *Johnson* factors include: (1) the time and labor

---

[5] Therefore, I need not address whether fees would be available based on Defendant's Offer of Judgment.

[6] The Eleventh Circuit has explained that "[a]lthough [this] balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th

required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

A court must look to the "billing judgment" of the attorney and exclude "excessive, redundant, or unnecessary hours" when evaluating the hours reasonably worked. *Norman*, 836 F.2d at 1301 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983)) (internal quotations omitted). When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut. *See Loranger*, 10 F.3d at 783. Importantly, "[t]he court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations and internal quotations omitted).

**B. Discussion**

Defendant seeks $32,155.00 in attorney's fees incurred in the course of this litigation. The fees were incurred by two lawyers and one paralegal at the law firm of Lee & Amtzis, P.L. ("L&A"). Defendant has provided a declaration and billing records itemizing the billing rates and hours expended on this litigation. (DE 70-4). Attorney Wayne H. Schwartz, Esq. has 28 years of experience in business litigation, bills at a rate of $350.00 per hour, and worked a total of 67.9

---

Cir. 1994) (citation omitted).

hours on this matter. He is a partner at L&A. Attorney Dori Solomon has 24 years of experience in business litigation, bills at a rate of $315.00, and worked a total of 18.8 hours on this matter. She is an associate at L&A. Finally, Ziva Allen is a paralegal with over 25 years of experience. She worked for 1.1 hours on this matter at a rate of $115 per hour. Plaintiff concedes that these hourly rates are reasonable. (DE 71 at 13-14). I also find that counsels' hourly rates are reasonable. *See Schmidt v. Versacomp, Inc.*, 08-60084-CIV, 2012 WL 12947144, at *6 (S.D. Fla. July 31, 2012) (finding a $350 hourly rate to be reasonable in a trademark infringement case).

As Defendant's counsel litigated this case from its inception through trial, I find that the amount of time expended on this matter is reasonable. Defendant also seeks attorney's fees for the time expended litigating this fees motion. The Supreme Court addressed whether "fees for fees" are acceptable in *Commissioner, I.N.S. v. Jean*. The Court found that fees should be awarded for time spent litigating entitlement to statuary fees as "fee-shifting statutes favor[] treating a case as an inclusive whole, rather than as atomized line-items." *Commr., I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990). Accordingly, I find that an award of fees is appropriate. Mr. Schwartz spent 9.0 hours working on fee-related matters, and Ms. Solomon expended 1.2 hours. Accordingly, Defendant's counsel is awarded reasonable attorney's fees of $32,155, which represents a lodestar calculated by multiplying the reasonable hourly rates for each attorney by their hours reasonably expended.[7]

---

[7] The lodestar is calculated by adding together the following amounts: (1) Mr. Schwartz's rate of $350.00 per hour is multiplied by 67.9 hours for a total of $22,295.00; (2) Ms. Solomon's rate of $275.00 per hour is multiplied by 18.8 for a total of $5,895.50 and (3) Ms. Allen's rate of $115.00 per hour is multiplied by 1.1 hours for a total of $126.50. The number is added to the hours expended on fee-related litigation: (1) Mr. Schwartz's rate of $350.00 per hour is multiplied by 9.0 for a total of $3,150.00 and (2) Ms. Solomon's rate of $275.00 per hour is multiplied by 2.0 hours for a total of $693.00.

8

## IV. COSTS

Defendant initially sought $500 is costs for mediation. However, Defendant later conceded that it was not entitled to these costs. (DE 73). Accordingly, no costs are awarded.

## V. CONCLUSION

Based upon the foregoing, and after careful consideration of the Parties' written submissions and the applicable law, it is hereby **ORDERED and ADJUDGED** that:

1. Defendant's Motion for Attorney's Fees (DE 70) is **GRANTED.**
2. Defendant is awarded **$32,155.00** in attorney's fees.
3. Plaintiffs' Motion to File Sur-Reply (DE 74) is **DENIED**.

**SIGNED** in Chambers in West Palm Beach, Florida, this 4 day of February, 2020.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE